# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS,
# EASTERN DIVISION

| | |
|---|---|
| UNITED SPECIALTY INSURANCE COMPANY<br>Plaintiff<br>v.<br>LG EXPRESS GROUP, INC.<br>Defendant. | Case No. |

## UNITED SPECIALTY INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, United Specialty Insurance Company ("United"), by and through its attorneys, David Holmes and Bret Franco, and for its Complaint for Declaratory Judgment against Defendant LG Express Group, Inc. ("LG") state as follows:

## STATEMENT OF THE CASE

1. This action seeks a declaration that United owes no insurance coverage obligations to the Defendant in connection with two lawsuits styled: (i) *Mercury Insurance Co. v. Keith Thompson, et al.*, Case No. 2021CV30121 (District Court, County of Eagle, Colorado) (the "Colorado Lawsuit") and (ii) *Thomas Hartman, et. al., v. Keith Thompson, et al.*, Case No. 21-cv-01409 (D. Illinois. 2021) (the "Illinois Lawsuit" and collectively, the "Hartman Actions").

2. Further, this action seeks a declaration that United's MCS-90 endorsement for the relevant insurance policy does not apply to the Accident or any judgment against LG, as LG was not the applicable for hire motor carrier at that time of the Accident. Therefore, United's MCS-90 does not apply.

## PARTIES

3. United Specialty Insurance Company is an insurance company formed under the laws of the State of Delaware with its principal place of business in Texas.

4. LG Express Group, Inc. is a motor carrier formed under the laws of the State of Illinois with its principal place of business in Alsip, Illinois.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, as the amount in controversy exceeds $75,000.00 exclusive of costs and interest and the parties are citizens of different states.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391 as the case concerns insurance coverage for a policy issued within the geographical boundaries of this District. Further, LG's principal place of business is within the geographical boundaries of this District.

## POLICY

7. United issued a Commercial General Liability Insurance policy, policy #XNX-FINFR1705408-465 ("the Policy") to LG with coverages extending from May 10, 2019 to May 10, 2020. (Ex. A)

8. The Policy provides commercial automobile coverage including Motor Carrier Coverage Form CA 00 20 10 13, which contains the following relevant terms, conditions, and exclusions.

9. The Policy contains the following requirement for registration of drivers under the Policy:

## PROGRAM REQUIREMENTS

> To be eligible for this Insurance Program the insured must utilize the Clear Connect Solutions, CCS, Administration and Compliance platform. All drivers must be cleared and vetted by CCS or coverages will be NULL and VOID.

(Ex. A, Page 2[1])

10. The Policy contains the following condition defining covered autos:

   **SECTION I – COVERED AUTOS**

   Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".[2]

   **A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 67 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |

(Ex. A, Page 38)

11. The Policy further states the following condition concerning newly acquired autos:

   **B. Owned Autos You Acquire After the Policy Begins**

   > \*\*\*
   >
   > 2. But, if symbol 67 is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only, if:
   >
   > > a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and
   > >
   > > b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

(Ex. A, page 39.)

---

[1] Exhibit A contains bate stamped pages USIC 1-98. All page citations for Exhibit A refer to the "USIC" page number.
[2] The Policy's Motor Carrier Declarations (CA DS 21 10 13) Schedule of Coverages and Covered Autos lists only "67" for Covered Autos Liability. *See* Ex. A.

12. The Policy states the following condition as to concealment, misrepresentation, and fraud:

> **B. General Conditions**
>
> \*\*\*
>
> **2. Concealment, Misrepresentation Or Fraud**
>
> This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:
>
> **a.** This Coverage Form;
> **b.** The covered "auto";
> **c.** Your interest in the covered "auto"; or
> **d.** A claim under this Coverage Form.

(Ex. A, page 48.)

13. The Policy contains the additional endorsement concerning the MCS-90.

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment received against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to financial responsibility requirements of Section 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

(Ex. A, pages 66-67.)

272930730v.1

**FACTUAL BACKGROUND**

*Overview of the Hartman Actions and Relevant Parties*

1. The Colorado Lawsuit is a subrogation action by the Hartmans' insurance carrier, Mercury Insurance Co., which seeks to recover benefits paid to the Hartmans. (The Complaint for the Colorado Lawsuit is attached as Exhibit B.) The Defendants in the Colorado Lawsuit include Thompson, LG, S&L Cartage, Inc., ILG International Logistics Group, and Samir Jakupovic. The Plaintiff in the Colorado Lawsuit seeks in excess of $300,000 in damages.

2. The Illinois Lawsuit is a personal injury action filed by the Hartmans. (The Amended Complaint for the Illinois Lawsuit is attached as Exhibit C.) The Defendants in the Illinois Lawsuit include Thompson, LG, S&L Cartage, Inc., ILG International Logistics Group, Samir Jakupovic, and Western Express, Inc. The Plaintiffs in Illinois Lawsuit are seeking recovery of over $1,000,000 in past medical expenses, without accounting for other damages to which they may be entitled.

3. The Hartman Actions arise from the same underlying event, a trucking collision that occurred in Eagle County, Colorado on July 27, 2019 ("the Accident"). In the Accident, Keith Thompson allegedly caused a three-car collision in which five members of the Hartman family sustained injuries and property damage.

4. At the time of the Accident, Keith Thompson was hauling a load to Las Vegas, Nevada pursuant to a bill of lading issued to S&L Cartage, Inc ("S&L).

5. The tractor driven by Thompson in the Accident was owned by ILG International Logistics Group, Inc. ("ILG"). ILG leased that tractor trailer to LG pursuant to a lease dated April 22, 2019 between ILG and LG. (Attached as Exhibit D.)

6. The Hartmans were passengers in a motor vehicle traveling westbound on I-70 at or near milepost 182 in Eagle County, Colorado.

7. LG is an authorized motor carrier.

8. S&L is also an authorized motor carrier.

9. ILG is no longer an authorized motor carrier.

10. LG, ILG, and S&L are owned and operated by Samir Jakupovic.

11. LG, ILG, and S&L operate out of the same facility in Alsip, Illinois.

12. LG, ILG, and S&L share employees, equipment, and assets.

13. LG, ILG, and S&L, via their common owner, Samir Jakupovic, operate as a joint venture.

*<u>Western Logistics Hires S&L as Motor Carrier and Issues a Bill of Lading to S&L</u>*

14. Western Logistics (a/k/a Western Express), a freight broker, contracted with S&L to move cargo from Berea, Kentucky to Las Vegas, Nevada. S&L and Western Express had a standing Carrier-Broker Contract ("Carrier Contract") dating back to June 12, 2018. (Carrier Contract attached as Exhibit E.)

15. Pursuant to the Carrier Contract, Western Logistics issued a bill of lading to S&L with a pick-up date of July 25, 2019. (Bill of Lading attached as Exhibit F.)

16. The bill of lading is signed by Michael Stopa on behalf of S&L.

17. On or about July 25, 2019, Thompson picked up the subject load on behalf of S&L.

*<u>S&L Breaches its Agreement with Western Express and Attempts to Fraudulently Sub-Contract with LG to Haul the Load</u>*

18. The Carrier Contract between Western Express and S&L states that "[b]oth parties recognize that the contract carrier service is solely to be provided by [S&L]." The Carrier Contract

6

does not permit S&L to subcontract to another motor carrier without Western Express's consent. *See* Ex. E.

19. S&L failed to obtain Western Express's consent to subcontract for the transportation of the subject load.

20. S&L is not a registered freight broker. It did not have authority to subcontract the load.

21. Samir Jakupovic and/or his authorized agents have claimed that Thompson experienced a vehicle malfunction after picking up the subject load that allegedly required him to first take the load from Kentucky to Alsip, Illinois.

22. Upon information and belief, Thompson did not actually drive to Alsip, Illinois. Instead, he traveled toward the final destination of Las Vegas, Nevada.

23. On July 25, 2019, S&L and LG allegedly entered into a General Contract for Services ("July 25 Contract") for LG to transfer the subject load to Las Vegas, Nevada. (The July 25 Contract is attached as Exhibit G.) Michael Stopa, who signed the bill of lading for S&L, also signed the July 25 Contact on behalf of LG.

24. In addition to the July 25 Contract, a separate Motor Vehicle Lease was allegedly executed on July 7, 2019 between S&L and LG ("July 7 Lease") for the subject tractor (VIN # 3HSDJAPR9GN23155). (The July 7 Lease is attached as Exhibit H.) The July 7 Lease identifies both S&L and LG as the "lessor." It also identifies LG d/b/a S&L as the Lessee. In other words, under the terms of this contract, LG leased the subject tractor to itself. The July 7 Lease also states that the Lessee agrees to only use the vehicle in Uganda.

25. Upon information and belief, Jakupovic and or his authorized agents created the July 25 Contract, and possibly the July 7 Lease, after the Accident occurred on July 27, 2019.

*After the Accident, LG Attempts to Conceal the Accident and Add Thompson and the Subject Tractor to the Policy and Backdate Coverage*

26. On July 29, 2019 (two days after the accident), LG's insurance agent requested, for the first time, that United add Thompson and the subject tractor to the Policy retroactively, effective on July 26, 2019 (one day before the subject accident).

27. At the time this Policy change was requested, neither LG nor its agent disclosed the Accident or Thompson's involvement to United.

28. After conducting a background check, United discovered that Thompson is listed on the National Sex Offender Registry. Accordingly, even if LG had notified United before the Accident to add Thompson to the Policy, the request would have been denied based on the failed background check.

29. The tractor that was being driven by Thompson at the time of the Accident, VIN # 3HSDJAPR9GN23155, was not listed on the Policy's schedule of covered autos.

30. This tractor was acquired by LG on April 22, 2019. The request to add the tractor to the Policy was first made on July 29, 2019, more than 30 days after April 22, 2019, when it was first acquired.

31. Since Thompson is not a listed driver under the Policy and the auto is not listed either, he is not an insured under the Policy and there is accordingly no liability coverage available to Thompson or LG for the Accident under the Motor Carrier Coverage Form.

32. The Policy also requires all drivers to be cleared and vetted by ClearConnect Solutions or coverages would be null and void. Thompson was not cleared by ClearConnect Solutions prior to the Accident.

33. LG has made claims for defense and indemnity to United for the Hartman Actions, which have been denied.

34. An actual and justiciable controversy exists between United and the Defendant as to the availability of insurance coverage for the Defendant with respect to the claims against them in the Hartman Actions under the Policy, and, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief that may be necessary.

## COUNT I
## There is No Coverage under the Policy as the Accident Involved a Driver Who Was Not Approved or Added to the Policy

35. United incorporates and restates the allegations of Paragraphs 1 through 34 above as if fully set forth herein.

36. Subject to its terms, the Policy requires that LG submit drivers for vetting and approval through Clear Connect Solutions before being added to the Policy.

37. Keith Thompson was permitted to drive by LG before a request was submitted for Thompson to be added to the Policy.

38. The Accident occurred before LG submitted a request for Thompson to be added as an approved driver.

39. Due to the results of Thompson's background check, he would never have been cleared as an approved driver, even if a request was made before the Accident to add Thompson to the Policy.

40. As such, United does not owe any defense or indemnity obligations to the Defendant under the Important Notices and Program Requirements of the Policy for the claims against the Defendant in the Hartman Actions.

WHEREFORE, Plaintiff, United Specialty Insurance Company, prays this Court enter the following relief:

    A.    A declaration finding United Specialty Insurance Company owes no duty to defend or indemnify the Defendant for the claims against them in the Hartman Actions; and

    B.    For all such just and equitable relief, including costs of this suit.

## COUNT II
### There is No Coverage Under the Policy as the Accident Involved an Auto that Was Not Timely Added to the Policy

41.    United incorporates and restates the allegations of Paragraphs 1 through 34 above as if fully set forth herein.

42.    Subject to its terms, the Policy permits newly acquired autos to be added to the Policy only 30 days after they are acquired.

43.    LG acquired the tractor (VIN # 3HSDJAPR9GN23155) on April 22, 2019. LG first attempted to add the tractor to the Policy on July 29, 2019, more than 30 days after it was acquired.

44.    At the time of the Accident, the tractor was not an insured auto because LG failed to properly add it to the Policy within 30 days of acquiring it.

45.    As such, United does not owe any defense or indemnity obligations to the Defendant under the "Motor Carrier" coverage part of the Policy for the claims against the Defendant in the Hartman Actions.

WHEREFORE, Plaintiff, United Specialty Insurance Company, prays this Court enter the following relief:

    A.    A declaration finding United Specialty Insurance Company owes no duty to defend or indemnify the Defendant for the claims against them in the Hartman Actions; and

    B.    For all such just and equitable relief, including costs of this suit.

## COUNT III
### LG's Intentional Misrepresentation and Fraud Bars Coverage

46. United incorporates and restates the allegations of Paragraphs 1 through 34 above as if fully set forth herein.

47. The Policy provides that coverage is void in the event the insured intentionally conceals or misrepresents a material fact concerning a claim.

48. LG or its authorized agent committed intentional misrepresentation and fraud when it did not disclose its knowledge of the Accident and Thompson's involvement when it sought to add Thompson and the subject tractor to the Policy with an effective date of coverage prior to the Accident.

49. LG's intentional misrepresentation and fraud voided any applicable coverage.

50. As such, United does not owe any defense or indemnity obligations to the Defendant under the "Motor Carrier" coverage part of the Policy for the claims against the Defendant in the Hartman Actions.

WHEREFORE, Plaintiff, United Specialty Insurance Company, prays this Court enter the following relief:

A. A declaration finding United Specialty Insurance Company owes no duty to defend or indemnify the Defendant for the claims against them in the Hartman Actions; and

B. For all such just and equitable relief, including costs of this suit.

## COUNT IV
### United's MCS-90 Does Not Apply as S&L, not LG, Was the For Hire Motor Carrier

51. United incorporates and restates the allegations of Paragraphs 1 through 34 above as if fully set forth herein.

52. S&L was hired by Western Express as the motor carrier to haul the subject load involved in the Accident.

53. The bill of lading was issued to S&L as the for hire motor carrier.

272930730v.1

54. A driver for S&L picked up the load.

55. The Carrier Contract between Western Express and S&L did not permit S&L to subcontract to LG to sub-haul the load involved in the Accident.

56. S&L and LG's July 25 Contract constituted a breach of the Carrier Contract, rendering the July 25 Contract a nullity and void.

57. Alternatively, upon information and belief, S&L and LG's July 25 Contract was created after the Accident occurred, rendering it a nullity and void.

58. In the alternative, LG, S&L, and ILG constitute a joint venture such that the July 25 Contract and July 7 Leases between LG and S&L constitute "sham leases" that are nullities and void.

59. The Agreements between LG and S&L were created to perpetuate fraudulent conduct and are both therefore nullities and void.

60. As such, the transfer from S&L to LG of the subject load was never valid in the first place. Therefore, S&L was the only for hire motor carrier at the time of the Accident.

61. The MCS-90 endorsement applies only to the for hire motor carrier. S&L was the for hire motor carrier at the time of the Accident.

62. Therefore, the MCS-90 endorsement attached to the Policy does not apply to the Accident and any judgment that may be obtained against LG or Thompson for the Accident

WHEREFORE, Plaintiff, United Specialty Insurance Company, prays this Court enter the following relief:

A. A declaration finding United Specialty Insurance Company owes no duty to defend or indemnify the Defendant for the claims against them in the Hartman Actions;

272930730v.1

  B. A declaration that LG was not the for hire motor carrier at the time of the Accident and that the MCS-90 endorsement contained within the Policy issued by United Specialty Insurance Company does not apply to this Accident or any judgment obtained against LG or Thompson; and

  C. For all such just and equitable relief, including costs of this suit.

**United Specialty Insurance Company**

By: /s/ *David Holmes*
 David M. Holmes
 Bret D. Franco
 Wilson Elser Moskowitz Edelman & Dicker LLP
 55 West Monroe Street—Suite 3800
 Chicago, Illinois 60603-5016
 312.704.0550 main
 David.Holmes@wilsonelser.com
 Bret.Franco@wilsonelser.com

272930730v.1